UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICALDEN INVESTMENTS S.A.,

                              **Plaintiff**                      07 Civ. 2395

            -against-                         **COMPLAINT**

OLGA ROSTROPOVICH, COOLEY
GODWARD KRONISH LLP, RENEE
SCHWARTZ, ATOOSA P.
MAMDANI and MAHMOUD A. MAMDANI,

                              **Defendants.**
-----------------------------------------------------------x

      Plaintiff Micalden Investments S. A. ("Micalden") by its undersigned counsel, for its complaint, states as follows:

### JURISDICTION, VENUE AND PARTIES

      1. This is an action to declare the validity of a UCC lien on the shares of a cooperative apartment sold in 2004 for $3.925 million and to direct the sale of those shares, or in the alternative for damages against one defendant for removing the lien by fraudulent means. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(2) because the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between a foreign corporation and citizens of a State.

      2. Venue is proper in this District pursuant to 28 U.S.C. §1391 because all defendants reside in this District, the property to which the action relates is located in this District and significant acts giving rise to the claims took place in this District.

3. Plaintiff Micalden is a corporation organized and existing under the laws of Panama with a principal place of business in Panama City, Panama and is wholly owned by Eva-Marie Blazek ("Blazek").

4. Upon information and belief, defendant Olga Rostropovich ("Olga") is a citizen of New York residing at 161 West 61st Street in the Southern District of New York.

5. Upon information and belief, Cooley Godward Kronish LLP ("Cooley"), a law firm, is a limited liability partnership organized and existing under the laws of California with a principal place of business in Palo Alto, California and an office located at 1114 Avenue of the Americas in the Southern District of New York. In the fall of 2006 Cooley became successor by merger to Kronish Lieb Weiner & Hellman LLP ("Kronish"), a New York law firm which represented and continues to represent Olga.

6. Upon information and belief, Renee Schwartz ("Schwartz") is an attorney residing and practicing in the State of New York, a current partner of Cooley and former partner of Kronish and the attorney who at all material times represented Olga with respect to Olga's matrimonial litigation and the other litigations which are the subject matter of this action.

7. Upon information and belief, defendants Atoosa P. Mamdani and Mahmoud A. Mamdani (collectively the "Mamdanis") are citizens of New York residing at 1 West 67th Street in the Southern District of New York.

## BACKGROUND

### The Creation Of The Relevant Liens

8. In 1991, Olga married Olaf Guerrand-Hermes ("Olaf"). In or about 1990, Olaf's father, Patrick Guerrand-Hermes ("Patrick") paid for the purchase and renovation of a cooperative apartment at the Hotel des Artistes, 1 West 67th Street (units 600, 601, 603 and 6M and collectively the "Apartment") in which Olaf and Olga resided. Ownership of the Apartment, consisting of a total of 756 shares (the Shares") of the cooperative corporation, Hotel des Artistes, Inc. (the "Cooperative Corporation") and a proprietary lease or leases (collectively the "Lease"), was recorded in Olaf's name, but the purchase price and renovation costs, totaling more than $3 million, were paid by Patrick.

9. In 2001 Olga commenced a divorce action against Olaf in Supreme Court, New York County (*Rostropovich v. Guerrand-Hermes,* New York County Index No. 350697/01 (the "Divorce Action")). The Divorce Action was tried in 2003. A post-trial decision (the "Divorce Decision") was issued on October 8, 2003. Judgment in the Divorce Action was entered January 26, 2004 (the "Divorce Judgment") but a money judgment for support arrears owed by Olaf to Olga in the amount of approximately $450,000 (the "Arrears Judgment") was entered earlier, on or about October 31, 2003. Following cross-appeals, the Divorce Judgment was modified in one respect in Olaf's favor and otherwise affirmed (*Rostropovich v. Guerrand-Hermes,* 18 A.D.3d 211, 794 N.Y.S.2d 42 (1st Dept. 2004)).

10. In 2003, at a time when Olaf and Olga had been estranged and living apart for some years, Olaf was engaged to Blazek, whom he married in 2004 after his divorce from Olga became final. Between February and May of 2003, Olaf borrowed approximately $1.4 million from Micalden (the "Micalden Loans") to pay various expenses, mostly related to the Apartment. The agreement was that the Micalden Loans would be secured by the Shares.

11. In the summer and fall of 2003, as the parties awaited the Divorce Decision, Blazek took formal steps to secure the Micalden Loans in accordance with the agreement of the parties. On October 2, 2003, Olaf executed an affidavit of confession of judgment in favor of Micalden and authorized the filing of a judgment by confession and a UCC1 financing statement (the "UCC1") recording Micalden's security interest in the Shares and the Lease (the "Micalden Lien"). The UCC1 was filed on or about October 10, 2003 with the Office of the City Register of the City of New York (the "City Register") and the judgment by confession (the "Consent Judgment") was entered with the Clerk of the Supreme Court on or about October 22, 2003 under New York County Index No. 118422/03 (the "Consent Action"). The UCC1 identified the collateral as

> "...all of the debtor's interest in the Proprietary Leases dated July 10, 1990, for apartments 603, 601, 6M and 600 located at 1 West 67th Street, New York, NY 10023, and the proceeds of any sale of the Shares, transfer of the apartments or subsequent assignment of the Leases.

**The Appointment Of The Receiver And The Consent Judgment Litigation**

12. On or about December 5, 2003, the court in the Divorce Action (Supreme Court, New York County, Emily Jane Goodman, J.S.C. (the

4

"Matrimonial Court")) entered an order appointing Harvey Fishbein, Esq. as receiver (the "Receiver") of the Apartment[1] with, among other powers, the authority to sell the Apartment (the "Receivership Order"). The Receivership Order also granted Olga's motion for "sequestration", meaning that all net proceeds of the sale of the Apartment, including the portion attributable to Olaf's equity interest, would be "sequestered" to secure Olaf's future alimony and child-support obligations to Olga.

13. After qualifying, the Receiver obtained an order from the Matrimonial Court authorizing the retainer of Carol Lilienfeld, Esq. as his counsel and began efforts to sell the Apartment.

14. During the period when the Receiver was trying to sell the Apartment, Olga, in an effort to maximize the net proceeds payable to her and/or available to be sequestered under the terms of the Receivership Order, began trying to remove those liens on the Apartment which had priority ahead of the Arrears Judgment and the Receivership Order, including among others the Consent Judgment.

15. On December 19, 2003, Olga, as a non-party affected by the judgment with statutory standing under applicable New York law, moved by order to show cause in the Consent Action to vacate the Consent Judgment on the ground that the entry of the Consent Judgment was designed to prevent Olga

---

[1] Of the four units which originally comprised the Apartment, Unit 600 was excluded from the receivership and subsequent sale by the Receiver of the Apartment to the Mamdani defendants because that unit was occupied not by the couple but by Olaf's brother Mathias Guerrand-Hermes ("Mathias") to whom it was transferred of record for no consideration simultaneously with the sale of the remainder of the Apartment to the Mamdanis. Subsequent references to the Apartment therefore refer only to Units 601, 603 and 6M and references to the Shares refer to the 724 shares appurtenant to those three units.

from collecting obligations due her and was therefore fraudulent as to her. Micalden contended in opposition that Micalden was a legitimate creditor of Olaf by virtue of the Micalden Loans, and that therefore the Consent Judgment, even if its effect was to prefer one legitimate creditor (Micalden) to another (Olga), was perfectly valid.

16. By decision and order dated March 17, 2004, the Matrimonial Court agreed with Olga and, without any evidentiary hearing, ordered the Consent Judgment vacated on the ground that even assuming the validity of the Micalden Loans, the court was satisfied that the real purpose of the Consent Judgment was to prevent Olga from collecting what she was and would be owed and it was therefore fraudulent as to her (the "Vacatur Order").

17. Micalden appealed the Vacatur Order to the Appellate Division, First Department (the "Appeal"). By decision dated June 29, 2006 (the "Appellate Decision") the Appellate Division reversed the Vacatur Order and remanded the case for a hearing on the ground that the Consent Judgment could only be vacated if Olga proved, by clear and convincing evidence, that the Consent Judgment was specifically intended to defraud her, and that Olga had failed to prove that below (*Micalden Investments S.A. v. Guerrand-Hermes*, 30 A.D.3d 341, 819 N.Y.S.2d 228 (1st Dept. 2006)). Since the entry of the Appellate Decision, Olga has taken no steps to obtain such a hearing.

18. At no time between December 2003 and June 2004 did Olga apply to any court for vacatur of the UCC1. The Vacatur Order, which contained a

direction to the Clerk of the Court to vacate the Consent Judgment, did not mention the UCC1 and contained no direction of any kind to the City Register.

**The Filing Of The Unauthorized UCC3 And The Sale Of The Apartment**

19. On or about March 30, 2004, the Receiver entered into a contract (the "Contract") to sell the Apartment to the Mamdanis for $3.925 million.

20. On or about May 12, 2004, Olga, through her counsel Schwartz and Kronish, caused a UCC3 Termination Statement (the "UCC3") to be filed with the City Register purporting to terminate the Micalden Lien. The UCC3 identified the "Presenter" as Olga Rostropovich and the party to whom the acknowledgment of filing was to be sent as Renee Schwartz at Kronish. Under the heading "Name of Secured Party of Record Authorizing This Amendment" was written "Micalden Investments SA".

21. The statement in the UCC3 that its filing had been authorized by Micalden was false. In truth, Micalden had never authorized the filing of the UCC3. At no time prior to the filing of the UCC3 did Olga or her counsel contact Micalden or its counsel with respect to the UCC3 or give notice to Micalden or its counsel of Olga's intent to file the UCC3 or of any legal challenge to the UCC1 or any attempt by Olga to have the UCC1 vacated.

22. Pursuant to the relevant provisions of Uniform Commercial Code ("UCC") §9-509, only Micalden was authorized to file a UCC3 terminating the Micalden Lien.

23. Micalden and its counsel were unaware of the UCC3 at the time it was filed and learned of it only when Olga moved to dismiss the Appeal as moot

and then argued mootness in her appellate brief, both times in reliance on the false UCC3. Olga's mootness argument was impliedly rejected by the Appellate Division in that the Appeal was decided on the merits by the Appellate Decision, which does not mention the mootness argument.

24. The sale of the Apartment to the Mamdanis (the "Sale") closed on or about June 10, 2004 (the "Closing").

25. Upon information and belief, at the time of the Closing, the only liens on the Shares prior in time and right to the Micalden Lien were the first mortgage (the "Mortgage") and an earlier arrears judgment in Olga's favor (the "Interim Arrears Judgment") (collectively the "Prior Liens"). Upon information and belief, the amount of the Prior Liens did not exceed $2.4 million.

26. If the Micalden Lien had been paid in the order it was entitled to in the distribution of the proceeds of the Sale (the "Proceeds"), there would have been enough money to pay the Micalden Loans in their entirety, with applicable interest.

27. Upon information and belief, the portion of the Proceeds that should have been paid to Micalden was in fact paid to or for the benefit of Olga, either pursuant to liens junior to the Micalden Lien, in payout of her equity interest or pursuant to the sequestration provision of the Receivership Order.

## COUNT I
### Declaratory Judgment

28. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 of this complaint.

29. A justiciable controversy exists between plaintiff and defendants regarding the surviving validity of the UCC1 and the Micalden Lien after the filing of the UCC3 on May 12, 2004, in that plaintiff contends that the UCC1 and the Micalden Lien survived that filing and remain valid today, which defendants dispute.

30. Pursuant to UCC §9-510, a filed record is effective only if filed by a party authorized to file such a record pursuant to UCC §9-509.

31. UCC §9-509(d) provides in turn as follows:

> (d) Person entitled to file certain amendments. A person may file an amendment other than an amendment that adds collateral covered by a financing statement or an amendment that adds a debtor to a financing statement only if:
>
> (1) the secured party of record authorizes the filing; or
>
> (2) the amendment is a termination statement for a financing statement as to which the secured party of record has failed to file or send a termination statement as required by Section 9-513(a) or (c), the debtor authorizes the filing, and the termination statement indicates that the debtor authorized it to be filed.

32. The UCC3 here relied upon subsection (1) above in that it purported to have been authorized by the secured party, not by the debtor, but in fact it was never authorized by Micalden.

33. By reason of the foregoing, the UCC3 was ineffective as a matter of law to terminate or discharge the UCC1 and/or the Micalden Lien and Micalden is therefore entitled to a judgment declaring that the UCC1 and the Micalden Lien are valid and subsisting liens on the Apartment, the Shares and the Lease.

## COUNT II
## Foreclosure and Sale

34. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 33 of this complaint.

35. Pursuant to UCC §§9-604 and 9-601(a)(1) plaintiff is entitled to foreclose the Micalden Lien and the Consent Judgment and to have the Shares, the Lease and any appurtenant interests sold at auction to satisfy the debt created by the Micalden Loans and evidenced by the Consent Judgment.

36. By reason of the foregoing, plaintiff is entitled to a judgment of foreclosure providing for the appointment of a referee to compute the principal and interest due under the Micalden Loans as embodied in the Consent Judgment (the "Current Debt") and directing the referee to sell the Shares, Lease and any appurtenant interest to satisfy said debt, and to remit to Micalden the net proceeds of such sale up to the full amount of the Current Debt as of the date of sale.

## COUNT III
## Unjust Enrichment

37. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 of this complaint.

38. By causing the filing of the unauthorized UCC3 and by then receiving money from the Proceeds of the Sale that should rightfully have gone to Micalden, Olga has been unjustly enriched.

39. By reason of the foregoing, Micalden is entitled to a money judgment against Olga in an amount to be determined at trial, consisting of a principal amount in excess of $1.391 million, plus interest accrued and accruing.

### COUNT IV
### Impairment of Collateral

40. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 39 of this complaint.

41. The filing of the unauthorized UCC3 by Olga, Schwartz and Kronish impaired Micalden's collateral by making it appear that the Micalden Lien had been discharged and caused the Proceeds of the Sale to be distributed in derogation of Micalden's lawful priority.

42. By reason of the foregoing, Olga, Schwartz and Cooley are jointly and severally liable to Micalden in an amount to be determined at trial, consisting of a principal amount in excess of $1.391 million, plus interest accrued and accruing.

43. Because the filing of the unauthorized UCC3 was a fraudulent act, plaintiff is also entitled to punitive damages in the amount of $12.5 million.

### COUNT V
### Fraud

44. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 43 of this complaint

45. By filing the false UCC3, Olga, Schwartz and Kronish falsely represented to the City Register and to the public that they represented, or had authority to act on behalf of, Micalden in filing the UCC3 (the "False

11

Representation")  Olga, Schwarz and Kronish knew the False Representation to be false when made.

46. Olga, Schwartz and Kronish made the False Representation for the purpose of inducing the clerk of the City Register to accept their filing of the unauthorized UCC3, as well for the purpose of fraudulently deceiving prospective purchasers of the Apartment into believing that the Apartment could be purchased free of the lien of the UCC1.

47. The clerk of the City Register relied on the False Representation in accepting the fraudulent UCC3 for filing and the Mamdanis, their counsel, their title company, the Receiver and the Receiver's counsel all relied on the apparent authenticity of the UCC3 and were deceived into believing that the Apartment was unencumbered by the UCC1 at the time of the Closing.

48. Olga, Schwartz and Kronish intentionally concealed their filing of the fraudulent UCC3 from Micalden, which continued to believe that its interest was protected by the UCC1.  Micalden relied on the continuing viability of the UCC1 by refraining from taking legal action to protect its interest which it would have taken had it known of the fraudulent UCC3 filing.

49. By virtue of the fraud perpetrated by Olga, Schwartz and Kronish, the Closing took place without any payment being made to satisfy the Micalden Loans.

50. But for the fraud of Olga, Schwartz and Kronish, the Closing would not have occurred without payment of the Micalden Loans.

51. By virtue of the foregoing, Olga, Schwartz and Kronish are jointly and severally liable to Micalden in an amount to be determined at trial, consisting of a principal amount in excess of $1.391 million, plus interest accrued and accruing.

52. Because the fling of the unauthorized UCC3 was a flagrantly dishonest act aimed not only at Micalden but also at the public, plaintiff is further entitled to punitive damages in the amount of $12.5 million.

WHEREFORE plaintiff demands that this Court enter judgment in its favor as follows:

A) On Count I, declaring that the UCC1 and the Micalden Lien are valid and subsisting liens on the Apartment, the Shares and the Lease;

B) On Count II, directing the appointment of a referee to compute the principal and interest due under the Micalden Loans as embodied in the Consent Judgment (the "Current Debt") and directing the referee to sell the Shares, Lease and any appurtenant interest to satisfy said debt, and to remit to Micalden the net proceeds of such sale up to the full amount of the Current Debt as of the date of sale;

C) On Count III, granting plaintiff a money judgment against Olga in an amount to be determined at trial, consisting of a principal amount in excess of $1.391 million, plus interest accrued and accruing;

D) On Count IV, granting plaintiff a money judgment against Olga, Schwartz and Cooley jointly and severally in an amount to be determined at trial,

consisting of a principal amount in excess of $1.391 million, plus interest accrued and accruing and punitive damages in the amount of $12.5 million;

E) On Count V, granting plaintiff a money judgment against Olga, Schwartz and Cooley jointly and severally in an amount to be determined at trial, consisting of a principal amount in excess of $1.391 million, plus interest accrued and accruing and punitive damages in the amount of $12.5 million; and

F) Granting plaintiff such other relief as the Court may deem just and proper.

Dated: New York, New York
       March 22, 2007

 

EDWARD RUBIN (ER-8843)
477 Madison Avenue
New York, New York 10022
(212) 888-7300

MICHAEL SCHNEIDER (MS-4555)
477 Madison Avenue
New York, New York 10022
(212) 888-2100

*Attorneys for Plaintiff*