UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICALDEN INVESTMENTS S.A.

                      Plaintiff,

             - against –

OLGA ROSTROPOVICH, COOLEY GODWARD
KRONISH LLP, RENEE SCHWARTZ, ATOOSA P.
MAMDANI, and MAHMOUD A. MAMDANI,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 07 CV 2395 (VM)


## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## BY DEFENDANTS COOLEY GODWARD KRONISH LLP
## AND RENEE SCHWARTZ TO DISMISS THE COMPLAINT


KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue, 18th Floor
New York, New York  10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866

Attorneys for Defendants
COOLEY GODWARD KRONISH LLP
  and RENEE SCHWARTZ

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................. ii

PRELIMINARY STATEMENT............................................................................ 1

BACKGROUND............................................................................................... 2

    A.    The Underlying Matrimonial Action and
             Mr. Guerrand-Hermès' Indebtedness to Ms. Rostropovich............... 4

    B.    Micalden and Mr. Guerrand-Hermès' Efforts to
             Thwart the Sequestration of the Apartment.................................... 5

    C.    The Sale of the Apartment............................................................. 9

    D.    Subsequent State Court Proceedings............................................. 10

MICALDEN'S COMPLAINT.............................................................................. 11

ARGUMENT.................................................................................................... 12

THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY........................... 12

    A.    Rule 12(b)(6): The Standard for Dismissal..................................... 12

    B.    Micalden's Failure to Allege the Existence of an
             Enforceable Security Interest and any Recoverable Damages.......... 13

          1.    *Micalden Does Not Have a Written Security Agreement*..... 14

          2.    *A UCC-1 Financing Statement Is Not A
                 Substitute for a Written Security Agreement*....................... 15

          3.    *The Alleged Collateral Was Not Delivered to Micalden*...... 16

          4.    *Micalden Was Not Damaged*............................................ 17

CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

***Cases***                                                                               ***Page***

Amron v. Morgan Stanley Investment Advisors Inc.,
464 F.3d 338 (2d Cir. 2006) ................................................................................ 13

Bell Atlantic Corporation v. Twombly, 2007 U.S. LEXIS 5901 (Sup. Ct. 2007) ...... 12

Hishon v. King & Spalding, 467 U.S. 69, 104 S. Ct. 2229,
81 L. Ed. 2d 59 (1984) ......................................................................................... 12

In re Baker, 48 B.R. 932 (Bankr. W.D.N.Y. 1985) ................................................. 16

In re Egilmez Restaurant Corp.,
1983 U.S. Dist. LEXIS 16774 (S.D.N.Y. 1983) ............................................. 14, 16

In re IAC/InterActiveCorp Securities Litigation,
2007 U.S. Dist. LEXIS 20788 (S.D.N.Y. 2007) ..................................................... 13

In re Lady Madonna Industries, Inc., 99 B.R. 536 (S.D.N.Y. 1989) ................. 14-15

In re Modafferi, 45 B.R. 370, 372 (Bankr. S.D.N.Y. 1985) ................................... 15

In re Wingspread Corp., 107 B.R. 456 (Bankr. S.D.N.Y. 1989) ........................... 16

Laminated Veneers Co., Inc. v. Bassin, 471 F.2d 1124 (2d Cir. 1973) ................. 15

Lanzatella v. Galan, 254 B.R. 84 (Bankr. W.D.N.Y. 2000) ................................... 16

Nash v. Omni-Veterinary Supply Co., Inc., 70 B.R. 40 (Bankr. E.D.N.Y. 1987) ..... 16

Official Committee of Unsecured Creditors of Color Tile, Inc. v.
Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003) ......................... 12-13

White Plains Towing Corp. v. Polizzi Towing Corp.,
1991 U.S. Dist. LEXIS 1494 (S.D.N.Y. 1991) ...................................................... 16

***Statutes and Related Authorities***

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...................... 1, 4 n.2, 12-13

Section 276 of the New York Debtor and Creditor Law ...................................... 7-8

Section 8-301 of the New York Uniform Commercial Code ................................. 16

Section 9-102 (a)(73) of the New York Uniform Commercial Code..................... 14

Sections 9-203 ((b), (b)(3), and (b)(3)(A)) of the
New York Uniform Commercial Code................................1-2, 12-13, 13 n.24, 14

Section 9-203 of the New York Uniform Commercial Code,
Uniform Laws Comment (Revised Article 9)..................................................... 16

DPARKE\119513.1 - 5/31/07

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------- x

MICALDEN INVESTMENTS S.A.                    :
                                             :
                    Plaintiff,               :
                                             :
              - against –                    :       Case No. 07 CV 2395 (VM)
                                             :
OLGA ROSTROPOVICH, COOLEY GODWARD            :
KRONISH LLP, RENEE SCHWARTZ, ATOOSA P.       :
MAMDANI, and MAHMOUD A. MAMDANI,             :
                                             :
                    Defendants.              :

------------------------------------------- x

### MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS COOLEY GODWARD KRONISH LLP AND RENEE SCHWARTZ TO DISMISS THE COMPLAINT

Defendants Cooley Godward Kronish LLP ("CGK") and Renee Schwartz, by their counsel Kleinberg, Kaplan, Wolff & Cohen, P.C., respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint filed by plaintiff Micalden Investments S.A. ("Micalden").

### Preliminary Statement

While there are many reasons why this action is meritless, the present motion for dismissal is limited to an obvious and compelling deficiency in Micalden's pleading. Each of the claimed causes of action in Micalden's complaint presupposes the validity of an alleged security interest in the shares and proprietary lease related to a cooperative apartment. However, section 9-203 of the New York Uniform Commercial

Code explicitly requires for the creation of a valid security interest that there be a signed, written security agreement or that the purported collateral be delivered to the secured party. Micalden fails to allege, and cannot allege, that Micalden had a written security agreement or that the shares and lease related to the apartment had been delivered to it. Without the factual predicate for a valid security interest, Micalden's UCC-1 financing statement relating to the shares and lease never had any legal effect. Micalden therefore cannot claim any damages based upon the termination of the UCC-1 financing statement, nor can it obtain a declaratory judgment of its validity.

Absent a valid security interest and a legally effective UCC-1 financing statement, all of Micalden's causes of actions against all of the defendants must fall. Since, as will be demonstrated below, Micalden cannot cure this fundamental defect in its pleading, the complaint should be dismissed in its entirety and without leave to replead.

### Background

Although the instant motion is limited to the narrow legal issue described above, the following background provides the context for this action and this motion.[1]

This action is the latest effort by Olaf Guerrand-Hermes to deny his former wife, defendant Olga Rostropovich, the benefits of orders and judgments obtained by Ms. Rostropovich against Mr. Guerrand-Hermes in their New York State Supreme Court

---

[1] The facts set forth in this preliminary background section are described more fully below in sub-sections A through D, and are supported by citations to Micalden's Complaint and the exhibits attached to the accompanying Transmittal Affidavit of David Parker sworn to on May 31, 2007 (the "Parker Aff.").

divorce proceeding (the "Matrimonial Action"). Mr. Guerrand-Hermes was assisted in this effort by Eva Blazek – then his fiancée and now his wife. Ms. Blazek is the sole owner of Micalden, a corporation allegedly organized in Panama and doing business in Panama City. After years of unsuccessful litigation against Ms. Rostropovich, Mr. Guerrand-Hermes is now using his new wife's Panamanian company to attempt to proceed against, among others, CGK, the law firm which represented Ms. Rostropovich in the Matrimonial Action, and Ms. Schwartz, the partner in charge of that matter.

In summary and as more fully set forth below, after obtaining the orders and judgments against Mr. Guerrand-Hermes in the Matrimonial Action and while the parties were awaiting the decision after trial in that Action, Ms. Rostropovich moved in that state court proceeding to appoint a receiver to sell an apartment which was the former marital residence and was mostly Mr. Guerrand-Hermes' separate property (the "Apartment"), in order to satisfy Mr. Guerrand-Hermes' outstanding obligations to her. But while Ms. Rostropovich's motion was pending, Mr. Guerrand-Hermes entered into a confession of judgment in favor of Micalden for more than $1 million, attempting to encumber his shares in the Apartment. Micalden thereafter filed a UCC-1 financing statement with respect to the Apartment.

As a creditor of Mr. Guerrand-Hermes, Ms. Rostropovich intervened in the consent judgment action Micalden had commenced against Mr. Guerrand-Hermes in the New York State Supreme Court (the "Consent Judgment Action"). Granting Ms. Rostropovich's application, the state court vacated the confession of judgment as a fraudulent conveyance. Thereafter, a UCC-3 termination statement was filed with the clerk

of the Office of the City Register of the City of New York, removing the UCC-1 financing statement from the shares and lease. The receiver then sold the Apartment to defendants Atoosa P. Mamdani and Mahmoud A. Mamdani (the "Mamdani Defendants") and, after further proceedings and pursuant to court Order, distributed the proceeds of the sale, including to Ms. Rostropovich.

The relevant details of the Matrimonial Action and the Consent Judgment Action are set forth below. In addition to fleshing out the context of this action and motion, they demonstrate why Micalden cannot cure the deficiencies in its pleading. We wish to emphasize, however, that because this motion addresses a purely legal issue, it is not necessary to revisit any of the issues decided by the state court.

A.    *The Underlying Matrimonial Action
and Mr. Guerrand-Hermes'
Indebtedness to Ms. Rostropovich*

On November 5, 2001, Ms. Rostropovich commenced the Matrimonial Action against Mr. Guerrand-Hermes titled Olga Rostropovich v. Olaf Guerrand-Hermes, Index No. 350697/01, in the Supreme Court of the State of New York, County of New York.[2] At the outset of the action, the Supreme Court awarded pendente lite child support

---

[2] Micalden's Complaint dated March 22, 2007 (the "Complaint"), at ¶ 9, annexed to the Parker Aff. as Exhibit A.

The exhibits accompanying this motion include documents in the possession of Micalden and its attorneys and referenced or relied upon by Micalden in this action, and publicly available court orders and judgments from the Matrimonial Action and the Consent Judgment Action, all of which properly may be considered on this motion to dismiss. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider not only the operative pleading but also "matters of which judicial notice may be taken" and

Footnote continued . . .

– which Mr. Guerrand-Hermes did not pay – resulting in the entry on July 24, 2002 of a pre-trial judgment against Mr. Guerrand-Hermes in the sum of $257,931.74.[3]  Ultimately, the Matrimonial Action was tried before the Honorable Emily Jane Goodman, J.S.C., over several days from November 2002 through March 2003.  However, through the time of trial and the summer of 2003, Ms. Rostropovich was unable to collect her pre-trial judgment, and arrears continued to accrue.

B.    *Micalden and Mr. Guerrand-Hermes' Efforts*
      *to Thwart the Sequestration of the Apartment*

On September 10, 2003, while the parties were waiting for the Court to issue its trial decision, Ms. Rostropovich made a motion (the "Sequestration Motion") seeking an order sequestering the Apartment, appointing a receiver to sell it, and applying the net sales proceeds to Ms. Rostropovich's arrears and future spousal and child support.[4]

Micalden asserts that on October 2, 2003, which was a few weeks after Mr. Guerrand-Hermes received the Sequestration Motion, and while that Motion was still *sub judice*, Mr. Guerrand-Hermes executed an affidavit of confession of judgment for

_____

. . . footnote continued from previous page

"documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).  Courts properly may take judicial notice of "matters of public record, such as pleadings and court orders from prior litigation between the parties."  Reisner v. Stoller, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999).  Under the law of this Circuit, all of the accompanying exhibits are properly part of the record on this motion.

[3] Judgment entered July 24, 2002, annexed to the Parker Aff. as Exhibit B.

[4] Complaint, at ¶ 12.

$1,390,674.30 in favor of Micalden.[5]   On or about October 10, 2003, also while the

Sequestration Motion was still pending, Micalden prepared and filed a UCC-1 financing

statement against the Apartment.[6]   A judgment by confession in favor of Micalden was

entered by the Clerk of the Supreme Court on October 22, 2003.[7]

The Sequestration Motion was granted a few days later, on October 28,

2003.[8]  On December 5, 2003, a receiver was appointed to sell the Apartment, so that Ms.

---

[5] Complaint, at ¶ 11; see also Affidavit for Judgment of Confession by Olaf Guerrand-Hermes sworn to on October 2, 2003, annexed to the Parker Aff. as Exhibit C.

The alleged timing of Mr. Guerrand-Hermes' execution of the confession of judgment was most convenient.  The next day, October 3, 2003, the Supreme Court issued its trial decision (the "Divorce Decision") and awarded Ms. Rostropovich a second judgment for arrears, which had been outstanding through the time of trial.  See Decision and Order dated October 3, 2003, by the Honorable Emily Jane Goodman, J.S.C., at 2, 30, annexed to the Parker Aff. as Exhibit D.  On October 31, 2003, this second judgment was entered against Mr. Guerrand-Hermes in the amount of $453,010.  See Judgment entered October 31, 2003, annexed to the Parker Aff. as Exhibit E; Complaint, at ¶ 9.

[6] Complaint, at ¶ 11; see UCC-1 Financing Statement filed by Micalden on October 10, 2003 (identifying the alleged collateral as "all of the debtor's [Mr. Guerrand-Hermes'] interest in the Proprietary Leases dated July 10, 1990, for apartments 603, 601, 6M and 600 located at 1 West 67th Street, New York, NY 10023, and the proceeds of any sale of the Shares, transfer of the apartments or subsequent assignment of the Leases"), annexed to the Parker Aff. as Exhibit F.

[7] Complaint, at ¶ 11; see also Judgment by Confession entered October 22, 2003 in the Consent Judgment Action, annexed to the Parker Aff. as Exhibit G.

[8] Complaint, at ¶ 12; see Order dated October 28, 2003, by the Honorable Emily Jane Goodman, J.S.C. (the "Sequestration Order"), annexed to the Parker Aff. as Exhibit H.

Rostropovich could receive the spousal and child support to which she was entitled pursuant to the Divorce Decision.[9]

On December 19, 2003, after Ms. Rostropovich learned about Mr. Guerrand-Hermes' confession of judgment to Micalden and the existence of the UCC-1 financing statement, Ms. Rostropovich intervened (as a creditor) in Micalden's Consent Judgment Action against Mr. Guerrand-Hermes (Index No. 118422/03) and moved to vacate the consent judgment as a fraudulent conveyance under section 276 of the New York Debtor and Creditor Law.[10]   Micalden opposed Ms. Rostropovich's motion and submitted an affidavit from Ms. Blazek,[11] which attempted to establish the *bona fides* of Micalden's alleged interest in the Apartment.  However, Ms. Blazek merely contended that Micalden had wired funds to Mr. Guerrand-Hermes' father, brother, cooperative board, and mortgage holder, and for certain of Mr. Guerrand-Hermes' living expenses. Significantly, Ms. Blazek's affidavit did not claim that Micalden had any written security agreement.[12]   Likewise, the one-page "demand revolving promissory note" signed by Mr.

---

[9] See Order of Appointment entered December 5, 2003, by the Honorable Emily Jane Goodman, J.S.C. (the "Order of Appointment"), annexed to the Parker Aff. as Exhibit I.

[10] Complaint, at ¶ 15.  This motion was also assigned to Justice Goodman.

[11] Complaint, at ¶¶ 3, 10.

[12] See Affidavit by Eva Blazek in Opposition sworn to on January 20, 2004 ("Blazek Aff."), annexed to the Parker Aff. as Exhibit J.

Guerrand-Hermes and the wire transfer records pertaining to the funds allegedly advanced to Mr. Guerrand-Hermes do not purport to set forth any security interest whatsoever.[13]

On March 17, 2004, Justice Goodman set aside the consent judgment as a fraudulent conveyance under § 276 of the Debtor and Creditor Law. The Court based its decision on several findings, including:

- Mr. Guerrand-Hermes had confessed judgment at a time when he was indebted to Ms. Rostropovich.

- The explanations articulated by Micalden for its loans to Mr. Guerrand-Hermes were "contradictory" since "Hermes first denied receiving any loans in 2003, and then testified that he had no recollection of any loans in that year."

- Mr. Guerrand-Hermes had demonstrated a pattern of his ongoing efforts to "subvert the Domestic Relations Law and order of the Court."

- It was highly suspicious that Micalden filed the UCC-1 eight months after it supposedly advanced funds to Mr. Guerrand-Hermes, instead of simultaneously with the advancement of funds.

- The timing of the Sequestration Motion and Ms. Blazek's admitted "intimate knowledge of the divorce proceedings" demonstrated an intent to prevent Ms. Rostropovich from collecting arrears.

- Mr. Guerrand-Hermes had executed a similar confession of judgment with his father, Patrick Guerrand-Hermes, at the same time.[14]

---

[13] See Demand Revolving Promissory Note dated "as of" February 20, 2003 (the "Promissory Note"), annexed to the Parker Aff. as Exhibit K; Blazek Aff., at Ex. B.

[14] Complaint, at ¶ 16; Decision and Order dated March 17, 2004, by the Honorable Emily Jane Goodman, J.S.C. (the "Fraud Decision"), at 8-9, annexed to the Parker Aff. as Exhibit L.

C.    *The Sale of the Apartment*

Following his appointment, the receiver commenced efforts to sell the Apartment.[15] On March 30, 2004, the receiver and the Mamdani Defendants entered into a contract of sale for the Apartment. The contract was approved by the trial court on April 8, 2004.[16] Before the closing, Micalden's UCC-1, which was based on the fraudulent conveyance, was terminated in light of the Fraud Decision, which held the confession of judgment to be a fraudulent conveyance, and the trial court's approval of the sale of the Apartment.[17] On June 10, 2004, the sale of the Apartment closed.[18] After the sale, the receiver held much of the proceeds in escrow for several months. Micalden did not seek to prevent the closing and did not intervene to seek to obtain the funds held by the

---

[15] Complaint, at ¶ 13; Sequestration Order, at 1; see also Order of Appointment, at 3-5.

[16] Complaint, at ¶ 19; Order Approving Contract of Sale dated April 8, 2004 (the "Order Approving Sale Contract"), by the Honorable Emily Jane Goodman, J.S.C., annexed to the Parker Aff. as Exhibit M.

[17] Complaint, at ¶ 20; Fraud Decision, at 6-9; Sequestration Order, at 1; Order of Appointment, at 4; Order Approving Sale Contract, at 1. CGK and Ms. Schwartz vigorously dispute the allegations in the Complaint that the UCC-1 financing statement was removed improperly, but the Court need not address, and indeed cannot address, these facts upon the instant motion to dismiss. As set forth below, even assuming all the facts in the Complaint were true, Micalden still could not sustain the claims in the Complaint. For the same reasons, Micalden's claims against Ms. Rostropovich and the Mamdani Defendants are patently meritless. Indeed, the only allegation against the Mamdani Defendants is that they were the purchasers of the Apartment. Complaint, at ¶¶ 19, 24. But that sale was pursuant to the Order Approving Sale Contract. For this reason and others, there can be no basis for any claim by Micalden against the Mamdani Defendants.

[18] Complaint, at ¶ 24.

receiver.   Nor did Micalden choose to participate in the proceedings attended by Mr. Guerrand-Hermes' counsel and other creditors concerning the distribution of these funds. The proceeds were ultimately distributed pursuant to the state court's Order dated November 18, 2004.[19]

D.    _Subsequent State Court Proceedings_

Rather than take any meaningful action to prevent the sale of the Apartment or the distribution of the funds, or in response to the termination of the UCC-1 financing statement, Micalden appealed the Fraud Decision.  Micalden delayed until the last day of the nine-month period in which to perfect its appeal, then requested an extension of time. The First Department granted the extension of time and on June 29, 2006 – two years after the sale of the Apartment – reversed the Fraud Decision on the procedural ground that the trial court should have held an evidentiary hearing.[20]

---

[19] Decision and Order dated November 18, 2004, by the Honorable Emily Jane Goodman, J.S.C., annexed to the Parker Aff. as Exhibit N.

[20] Complaint, at ¶ 17; see Decision and Order by the Appellate Division, First Department, dated June 29, 2006, annexed to the Parker Aff. as Exhibit O.  The Appellate Division ruled this way even though the trial court had already made factual findings about Mr. Guerrand-Hermes' lack of credibility, as noted by Judge Andrais in his dissent.

Notably, in the eleven months since the Appellate Division's reversal of the Fraud Decision, neither Mr. Guerrand-Hermes nor Ms. Rostropovich has proceeded with any evidentiary hearing.  CGK and Schwartz respectfully suggest that, to the extent Mr. Guerrand-Hermes and Micalden believe he or it has any appropriate claims, they should be brought in the New York State Supreme Court in either the Matrimonial Action or the Consent Judgment Action.

### Micalden's Complaint

Each count in the Complaint in this action presupposes that Micalden can establish that it had an enforceable security interest in the Apartment shares, lease and sale proceeds, and that the UCC-1 financing statement was valid.[21]  However, Micalden does not plead any of the prerequisites for its claims.  Rather, it merely alleges that Mr. Guerrand-Hermes borrowed approximately $1.4 million from Micalden based on an unspecified "agreement."[22]  The Complaint does not allege that there was any written security agreement, much less that the shares for the Apartment had been delivered to Micalden.

In spite of these pleading deficiencies, Micalden's first count seeks a declaratory judgment that the UCC-1 financing statement and the alleged security interest are valid.  Micalden's second claim, against the Mandami Defendants as the purchasers of the Apartment, seeks to foreclose Micalden's alleged security interest and the Consent Judgment and to have the shares sold at auction.  The third count alleges that Ms. Rostropovich was unjustly enriched when she received the proceeds of the sale of the Apartment.  The fourth count alleges that CGK and Ms. Schwartz impaired Micalden's collateral by terminating the UCC-1 financing statement. Lastly, Micalden's fifth count alleges that CGK and Ms. Schwartz misrepresented to the City Register that they were

---

[21] Complaint, at ¶¶ 1, 8-14.

[22] Complaint, at ¶ 10.

authorized to file the UCC-3 termination statement and concealed the filing of the UCC-3 from Micalden.[23]

As explained below, these allegations are insufficient, because they fail to allege that Micalden had a valid security interest in the Apartment in the first place. Without such an interest, all of Micalden's claims must fail.

### Argument

### The Complaint Should Be Dismissed In Its Entirety

As set forth above, Micalden's complaint should be dismissed because it fails to plead, and cannot plead, that Micalden had an enforceable security interest in the Apartment shares and sale proceeds pursuant to section 9-203 of the New York Uniform Commercial Code. There was therefore no security interest to perfect, and the UCC-1 financing statement filed by Micalden was of no legal effect. As a result, Micalden could not and did not suffer any damages when the UCC-3 termination statement was filed terminating the inoperative UCC-1 financing statement.

A.    *Rule 12(b)(6): The Standard for Dismissal*

A complaint should be dismissed under Rule 12(b)(6) if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984), or if the complaint allegations are not "plausible on [their] face." Bell Atlantic Corporation v. Twombly, 2007 U.S. LEXIS 5901, at *9 (Sup. Ct. 2007); Official Committee

---

[23] Complaint, at ¶¶ 8-14; see also UCC-3 Termination Statement filed on or about May 12, 2004, annexed to the Parker Aff. as Exhibit P.

of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003) (citation omitted).

Since a plaintiff must allege those facts "*necessary* to a finding of liability," a complaint should be dismissed under Rule 12(b)(6) if the plaintiff's allegations are "doomed to fail under any available legal theory." Amron v. Morgan Stanley Investment Advisors Inc., 464 F.3d 338 (2d Cir. 2006) (emphasis in original). "[T]he court will not credit conclusory statements unsupported by factual allegations ... [n]or should a court accept allegations that are contradicted or undermined by other more specific allegations in the complaint or by written materials properly before the court." In re IAC/InterActiveCorp Securities Litigation, 2007 U.S. Dist. LEXIS 20788, at *26-27 (S.D.N.Y. 2007).

B.    *Micalden's Failure to Allege the Existence of an*
      *Enforceable Security Interest and any Recoverable Damages*

Micalden's Complaint is deficient as a matter of law based on well-settled UCC law.  Section 9-203(b)(3) of the New York Uniform Commercial Code governs the establishment of enforceable security interests, and requires either that:  (i) "the debtor has authenticated a security agreement that provides a description of the collateral" or (ii) "the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party."[24]  Here, Micalden has pled neither requirement and could not establish them as a matter of law.

---

[24]   N.Y. U.C.C. § 9-203(b) also requires that (1) "value has been given" and (2) "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured

Footnote continued . . .

1.    *Micalden Does Not Have a Written Security Agreement.*

The Complaint contains no reference whatsoever to the existence of any written security agreement.  Under the Uniform Commercial Code, a "security agreement" is "an agreement that creates or provides for a security interest," N.Y. U.C.C. § 9-102(a)(73), and must be in writing.  In re Egilmez Restaurant Corp., 1983 U.S. Dist. LEXIS 16774, at *4 (S.D.N.Y. 1983).  The written security agreement requirement (N.Y. U.C.C. § 9-203(b)(3)(A)) "is in the nature of a statute of frauds."  In re Lady Madonna Industries, Inc., 99 B.R. 536, 542 (S.D.N.Y. 1989) (citation omitted).  It is fundamental that "[t]here must be a binding security agreement in order to make [a] security interest enforceable." Egilmez Restaurant Corp., 1983 U.S. Dist. LEXIS 16774, at *5.

Indeed, Micalden never alleges that it produced any written security agreement when the legitimacy of its alleged interest was litigated in the Consent Judgment Action.  The alleged "agreement" mentioned in the Complaint (¶10) can refer to only one written document – the promissory note executed by Mr. Guerrand-Hermes in favor of Micalden.[25]  This promissory note, purportedly executed almost eight months prior to the filing of the UCC-1 financing statement, neither refers to the Apartment's shares or lease or any other security for the alleged loan, nor identifies the purported collateral – and does

---

. . . footnote continued from previous page

party."   If this action proceeded to discovery, CGK and Ms. Schwartz would argue that value had not been given and that Mr. Guerrand-Hermes' rights in the shares and proprietary lease were removed by the Sequestration Order.

[25] See Promissory Note.

not even purport to establish any security interest.[26]  Finally, the Complaint concedes that the only "formal steps to secure the Micalden Loans" were Micalden's execution of the affidavit of confession of judgment and the filing of the UCC-1 financing statement, neither of which gives rise to a valid security interest.[27]  The only possible inference is that no written security agreement exists.

2.    *A UCC-1 Financing Statement Is Not*
*A Substitute for a Written Security Agreement*

Micalden cannot avoid the UCC's requirement of a written security agreement by relying on the UCC-1 financing statement.  Courts have repeatedly held that "[a UCC-1] financing statement cannot serve as a security agreement."  In re Lady Madonna Industries, Inc., 99 B.R. at 542; In re Modafferi, 45 B.R. 370, 372 (Bankr. S.D.N.Y. 1985) ("a standard form financing statement, standing alone, does not constitute a security agreement.").  Unlike a "financing statement ... which is designed merely to put creditors on notice that further inquiry is prudent ... the security agreement embodies the intentions of the parties."  Laminated Veneers Co., Inc. v. Bassin, 471 F.2d 1124, 1125 (2d Cir. 1973); In re Lady Madonna Industries, Inc., 99 B.R. at 543.  A financing statement

---

[26]    Since the promissory note obviously is in the possession of Micalden and was referenced in the Complaint and relied upon by Micalden in bringing this action, the document can be considered in connection with this motion to dismiss.

[27] Complaint, at ¶ 11.  The affidavit of confession of judgment (Ex. C) includes no language creating a security interest and does not describe the shares in the Apartment, so it cannot constitute a security agreement.  Micalden asserts no allegations to the contrary.

does not constitute a security agreement but indicates only that the secured party *may* have an interest in the collateral:

> Standardized perfection forms [financing statements] are intended to be perfection documents. Creation documents are creation documents. The two are not interchangeable.

Lanzatella v. Galan, 254 B.R. 84, 88 (Bankr. W.D.N.Y. 2000).

It is well-settled that "[w]here there is no security agreement, the filing of a financing statement is a nullity." In re Egilmez Restaurant Corp., 1983 U.S. Dist. LEXIS 16774, at *5. Therefore, "[u]nless the grant of a security interest is contained in [a] security agreement, there is no security interest." White Plains Towing Corp. v. Polizzi Towing Corp., 1991 U.S. Dist. LEXIS 1494, at *13-14 (S.D.N.Y. 1991); In re Baker, 48 B.R. 932, 934 (Bankr. W.D.N.Y. 1985).

### 3.    *The Alleged Collateral Was Not Delivered to Micalden*

In lieu of a written security agreement, a secured party may have a valid security interest in a certificated security if it was delivered to the secured party. See N.Y. U.C.C. ¶ 9-203, Uniform Laws Comment (Revised Article 9), at 4 ("delivery of a certificated security to the secured party under Section 8-301 pursuant to the debtor's security agreement is sufficient as a substitute for an authenticated security agreement"); see also In re Wingspread Corp., 107 B.R. 456, 461 (Bankr. S.D.N.Y. 1989) ("unless the secured party has possession of the collateral, the debtor must have entered into a written security agreement"); Nash v. Omni-Veterinary Supply Co., Inc., 70 B.R. 40, 42 (Bankr. E.D.N.Y. 1987) ("without having to have a separate security agreement ... it is necessary that the collateral be in the possession of the secured party").

However, Micalden does not allege that the shares relating to the Apartment were delivered to it. Indeed, these cooperative shares could not have been delivered to Micalden because the bank-mortgagee had possession of them and delivered them at closing. As a matter of common sense, if the shares had been delivered to Micalden, the sale of the Apartment to the buyers would not have occurred.[28]

### 4.    *Micalden Was Not Damaged*

Micalden's declaratory judgment count and its causes of action for damages are all based upon the existence of an enforceable security interest in the Apartment, which in turn is predicated upon a written security agreement or delivery of the collateral. Since Micalden fails to allege and cannot allege either of these requirements, even if the allegations of the complaint are deemed to be true for the purposes of this motion, Micalden held no enforceable security rights and suffered no damages by the termination of the UCC-1 financing statement.

Although Micalden may have filed a UCC-1, and Ms. Blazek may have had an informal understanding with her then fiancé, Mr. Guerrand-Hermès, about how Micalden would be repaid, Micalden never completed the first step in the process, properly creating a security interest in accordance with the New York Uniform Commercial Code. Micalden therefore has not alleged the basis for any claim that its

---

[28] There is no allegation by Micalden that it even notified the bank-mortgagee of Micalden's purported security interest, or ever requested that the cooperative board execute a recognition agreement reflecting the supposed security interest in the Apartment.

UCC-1 financing statement ever had any legal effect.   Since the UCC-1 had no legal effect in the first place, the filing of the UCC-3 was of no consequence and Micalden was not damaged.

In light of these deficiencies, Micalden's complaint fails under all of its legal theories and should be dismissed.

### Conclusion

For the reasons stated above, CGK and Ms. Schwartz respectfully request that Micalden's complaint, including each and every cause of action therein, be dismissed, and that CGK and Ms. Schwartz be granted such further and additional relief as may be just and proper.

Dated: May 31, 2007

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: _____
David Parker (DP-1075)
Marc R. Rosen (MR-9844)

551 Fifth Avenue, 18th Floor
New York, New York  10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866

Attorneys for Defendants
**COOLEY GODWARD KRONISH LLP
and RENEE SCHWARTZ**