# LAW OFFICE OF EDWARD RUBIN
**477 MADISON AVENUE
NEW YORK, NEW YORK 10022
TEL: 212-888-7300  FAX: 212-888-7306**

September 11, 2007

<u>**BY ECF**</u>
Hon. Victor Marrero
United States District Judge
United States Courthouse
500 Pearl St., Room 660
New York, NY 10007

Re: Micalden Investments v. Rostropovich
07 Civ. 2395 (VM)

Dear Judge Marrero,

I am one of the attorneys for plaintiff in this action.

On September 7, in accordance with the Court's previous order, plaintiff filed its opposition to defendants' motion to dismiss. As previously mentioned, those motions raised a single issue; the alleged absence of a security agreement and the resultant presumed invalidity of the UCC1 on which plaintiff's case is based. The opposition filed included a security agreement prepared and executed by the debtor, Olaf Guerrand-Hermes (himself a lawyer by training) in or about May 2003. I had been endeavoring to obtain an affidavit from the city official in Larache, Morocco who notarized that signature but had been unable to do so by the agreed-upon September 7 deadline.

Although it was thought that a more elaborate security agreement had been prepared by an American lawyer and executed in early October 2003 as part of the suite of documents including the affidavit authorizing the judgment by confession which was the subject of the previous state-court litigation between plaintiff and defendant Rostropovich, that document could not be located by plaintiff's principal, despite a diligent search of their Morocco residence and the residence of Mr. Guerrand-Hermes's father in Chantilly, France, where some of their records have been maintained.

On Monday, September 10, however, I was informed that Mr. Guerrand-Hermes had discovered a copy of the October security agreement in the office of a lawyer in Paris. That document, a copy of which is annexed as Exhibit A to the affidavit of Mr. Guerrand-Hermes filed herewith, clearly shows that it was notarized at the

Hon. Victor Marrero, U.S.D.J.
September 11, 2007
Page 2

U.S. Consulate in Casablanca on October 2, 2003 by Vice Consul Daniel J. Ernst. It is accompanied by an assignment of Mr. Guerrand-Hermes's interest in the proprietary lease to the subject co-op apartment, identical in its date and form of execution and acknowledgment. The notarization and date of these documents are precisely the same as those already familiar to defendants Rostropovich, Cooley and Schwartz from the state-court litigation. The existence of this security agreement, the authenticity and date of which cannot seriously be questioned, would appear to be entirely dispositive of the pending motions.

In these circumstances, because the probative value of this document greatly outweighs any conceivable prejudice to defendants accruing between Friday and today, I ask that the Court treat this letter as a motion to supplement plaintiff's opposition to the motions so as to include the documents filed herewith. The filing also includes a second amended complaint, changed only to include a reference to the October 2003 security agreement. Indeed, as the existence of a security agreement which antedated the UCC1 filing now appears inarguable, it seems fair to inquire of defendants why these motions should not now be withdrawn.

I thank the Court for its consideration of this matter.

Respectfully yours,

_____ /Edward Rubin/ _____
Edward Rubin (ER-8843)

2

## AFFIDAVIT OF OLAF GUERRAND-HERMES

REPUBLIC OF FRANCE
ss:

Olaf Guerrand-Hermes, being duly sworn, deposes and says:

1.  I reside in Larache, Morocco.  I am personally familiar with the matters set forth herein.

2.  After signing my prior affidavit on September 6, 2007, to which a Security Agreement which I had prepared in the spring of 2003 is attached as Exhibit B, I recalled that I may have also signed another security agreement prepared by an attorney several months later at the time I also signed certain other documents relating to my indebtedness to Micalden Investments.   On September 10, 2007 I went to the office of my attorney in Paris, Devolve Rouche, to look for another security agreement.   Attached as Exhibit A is the Security Agreement which I found on that date in Mr. Rouche's office in Paris.

3.  As indicated at the end of the document, I signed this Security Agreement on October 2, 2003 in Casablanca, Morocco in the Consulate General of the United States.  My signature was notarized by Daniel J. Ernst, Vice Consul of the United States, at the office of the Consulate General on that date.

4.  This Security Agreement (Ex. A) was prepared by an attorney for Micalden.  I was asked by Micalden to sign this second Security Agreement by this attorney at the time I was

asked to sign other documents relating to my indebtedness to Micalden, including an affidavit of confession of judgment. A copy of this affidavit of confession of judgment, which I also signed on October 2, 2003 in Casablanca in the office of the United States Consulate General, and which was also notarized by Mr. Ernst at that time, is attached as Exhibit B.

Olaf Guerrand-Hermes

*Vu pour légalisation de la signature*

*de M.* Olaf GUERRAND - HERMES

*Apposée ci-dessus*

*CHANTILLY, le 11 septembre 2007*

*Le Maire,*

*Territorial Délégué,*

Sworn to this _____
day of September, 2007

2

# EXHIBIT  A

# SECURITY AGREEMENT

## Apartment No.: 603, 601, 6M, and 600

## Street Address: 1 West 67th Street, New York, New York 10023

This is a Security Agreement (the "Agreement") dated the _____ day of _____, 2003 between Olaf Guerrand-Hermes, residing at 1 West 67th Street, New York, New York, 10023(collectively, the "Borrower") and Micalden Investments SA("Lender"),a corporation, organized and existing under the laws of Panama, having an office c/o Morgen & Morgen, Swiss Tower, 16th Floor, 53 Road E. Street, URB Marbela – World Trade Centre, Panama City, Panama.

1.    <u>Definitions</u>

I, MINE, ME, MY, MYSELF--refer to the Borrower. Note--refers to the instrument which the Borrower signed this day and which evidences the loan (the "Loan") in the amount of $1,390,674.30 made to the Borrower by Lender.

2.    <u>Loan</u>

I agree to repay the Loan as required by the terms of the Note.

3.    <u>Ownership</u>

I own a total of 756 shares (the "Shares") of capital stock of Hotel des Artistes, Inc. (the "Corporation") and am the tenant under the proprietary leases (the "Leases") for Apartments 603, 601, 6M, and 600 (the "Apartments") in the building located at 1 West 67th Street, New York, New York 10023. I represent to Lender that the Shares are all the cooperative shares allocated to the Apartments.

4.    <u>Security</u>

To secure my repayment to Lender of the Loan, I pledge to Lender all of my right, title and interest in the Shares and assign to Lender all of my right, title and interest in the Leases and in the proceeds of any sale of the Shares, transfer of the Apartments or subsequent assignment of the Leases. The Shares, Leases, sale proceeds, any replacement and additional Shares and any amendments to and extensions or replacements of the Leases are referred to as the "Security"; the interest of Lender in the Security is referred to as the "Security Interest."

5.    <u>End of Security Interest</u>

The Security Interest shall end and Lender shall release its interest in the Shares and the Leases when I have repaid the Loan in full and have made all other payments required under the Note and this Agreement.

6.    Additional Documents; Power of Attorney

Upon Lender's request, I agree to sign any financing statements and renewals in addition to any other documents that Lender may require to establish and/or protect its rights in the Security. I also authorize Lender to sign these documents in my name as my attorney-in-fact and then file and/or record them as is appropriate. This power of attorney is coupled with an interest and shall not lapse due to my incompetency or disability.

I have also provided the Lender with the following documents: (A) Assignment of the Proprietary Leases; (B) blank stock power; and (C) Confession of Judgment. These documents are to be used by the Lender for the sole purpose of enforcing the terms and conditions set forth in the Agreement.

7.    Written Statement of Amount Due

If Lender requests, in writing, a confirmation of the amount owed by me under the Note and this Agreement, within eight (8) days after such request I will give Lender a signed statement confirming the amount owed.

8.    Rights In The Security

No one other than the Corporation, myself and, by virtue of this Agreement, Lender has any interest in or claim against the Security. I agree to defend my ownership of, and Lender's rights to, the Security as specified in this Agreement against any and all other claims, and I shall keep the Security free of any other liens not expressly approved by Lender, other than liens granted to First Republic Bank of San Francisco, California; Prague Associates (Cyprus) Limited; On Capital LLC; Eva Blazek; Xavier Guerrand-Hermes; and Patrick Guerrand-Hermes.

9.    Reimbursement

If Lender has to defend its rights under the Note or this Agreement, then any money which Lender has to pay (including reasonable attorney's fees) shall be added to the amount I owe Lender and paid by me promptly at Lender's request with interest at the then applicable rate set forth in the Note.

10.    Default

The happening of any of the following events means that I will be in default. Lender will then have the right to require that all amounts that I owe to Lender under the Note and this Agreement be paid in full to Lender with interest at the then applicable rate set forth in the Note up to the day Lender receives payment. I will be in default: (A) If any payment required by the Note is not made within fifteen (15) days after it is due or if any terms, conditions or provisions of the Note have been violated; or (B) If any payment required by the Leases is not made on time or if any terms, conditions or provisions of the Leases have been violated; or (C) If either I or the Corporation cancel the Leases; or (D) If I fail to pay or bond any judgment and/or any tax deficiency; or (E) If I sublet the Apartment or assign the Security without first paying all amounts that I owe under the Note and this Agreement or receiving Lender's written consent; or (F) If I do not comply with any term,

condition or provision of this Agreement; or (G) If any statement or representation made by me, under this Agreement is not true or correct. However, Lender will not exercise its option to require immediate payment in full under (E) if exercise is prohibited by federal law as of the date of this Agreement.

11.    Lender's Rights If I Am in Default

(A) In the event that I am in default and Lender elects to demand payment of the entire amount I owe under the Note and this Agreement, Lender will so notify me. If I fail to pay what I owe within fifteen (15) days of the notification, Lender may, in addition to all of its other legal rights, sell the Security at public or private sale, with or without advertisement of the time, place or terms of sale, except that if it is a private sale, it shall occur no less than five (5) days after written notice to me. In the event of any such sale, Lender may deduct from the proceeds of the sale all expenses of collection, sale and delivery of the Security, and any other expenses including, but not limited to, reasonable attorney's fees and disbursements, costs, broker's commissions, transfer fees and taxes. Lender may then apply the balance of the sales proceeds to any liability of mine under the Note or this Agreement, and Lender shall return any surplus to me. Lender shall determine the terms of any such sale in its sole discretion. A sale conducted according to the usual practice of banks selling similar security will be considered reasonably conducted. Lender may sell the Security for immediate cash payment or on credit. If the sale is on credit, Lender shall retain the Security until the sale price is paid in full. Lender will not be liable if the buyer fails to pay and Lender may then resell the Security. (B) Lender may elect to continue to hold the Shares and Leases if it determines that a better price can be obtained at a later date and, absent gross negligence, Lender will not be liable to me for any loss in value in the Security. If Lender has the right to sell the Security and has not begun to do so within ninety (90) days, I may demand that Lender proceed to sell the Security or I may make the sale myself, at my own expense. However, Lender will not be required to sell the Security if the net proceeds would not be enough to repay in full my debt under the Note and this Agreement. Similarly, Lender may not prevent me from making the sale if the net proceeds would be enough to repay my debt in full. (C) If Lender elects to retain the Security, it shall give me notice of its election. If I object to its election within thirty (30) days after its notice, Lender shall offer the Security for sale and must sell if the net proceeds would be large enough to pay all that I owe Lender under the Note and this Agreement. (D) Lender shall have the right, in connection with a sale, to complete a stock power and assignment of Leases in order to transfer the Shares and the Leases. I hereby give Lender the right, in connection with such sale, to request that the Corporation terminate the Leases and take all lawful steps necessary to obtain possession of the Apartment for and on behalf of Lender. I will promptly vacate my Apartment upon the sale of the Security. Lender may start legal proceedings to get possession of the Apartment if I refuse to so vacate. (E) Lender or anyone designated by Lender may purchase the Security as stated in above, free of my right to redeem the Security, which right of redemption I now waive. (F) Lender may seek the appointment of a receiver, without notice to me and without regard to the adequacy of the Security, to the extent permissible by law.

12.    Disposition of Sale Proceeds

If Lender sells the Security, the proceeds shall be applied as follows: (A) first, to the expenses of collection, selling and delivering the Security, including (but not limited to) attorney's fees,

brokerage commissions, transfer fees and taxes; (B) second, to the payment of any charges due under the Leases; (C) third, to the payment of my debt in full; and (D) finally, the surplus, if any, to me unless there are other valid claims to the surplus.

13.    Nonliability of Corporation

The Corporation will not be liable to me if it transfers my Shares and Leases as required by this Agreement or if it refuses to transfer my Shares and Leases to another person without Lender's consent.

14.    Lender's Payments on My Behalf

In the event that Lender makes any of the payments or performs any acts required under the Leases on my behalf, I agree to promptly repay Lender for such payments and for the cost of such acts including but not limited to, reasonable attorney's fees, with interest at the then applicable rate provided in the Note. I further agree that any such sums shall be added to the amount owed to Lender and secured by the Security. I agree that Lender shall have no obligation to make any payments or perform any acts required under the Leases on my behalf.

15.    No Sale of the Security

If I sell, transfer, modify or surrender the Security or sublet the Apartment without Lender's prior written consent, Lender may, at its option, require immediate payment in full of the entire amount due under the Note or this Agreement. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Agreement.

16.    Usury

No matter what else is set forth in this Agreement, the Note or any other instrument executed by me in connection with the Loan, if any payment by me or act by me would result in the payment of interest in excess of the maximum rate of interest legally permissible, then my obligation to make such payment or do such an act shall be deemed automatically reduced to such maximum rate, so that in no event will I be obligated to make any payment, perform any act or promise to do (or not to do) any act which would result in the payment of interest in excess of such maximum rate. Any such excess payments shall be applied as partial prepayments of my debt.

17.    Use of Premises

At Lender's option, all sums due under this Agreement and the Note will become immediately due and payable if: (A) the Apartments are used for any purposes that increase the risk of fire or other hazard; or (B) the Apartments are used for any unlawful purpose. I will maintain the Apartments in a good state of repair, free from waste, and I will promptly obey all federal, state and municipal requirements affecting the Apartments.

18.    Successors and Assigns

All of my rights and obligations under this Agreement, and all of Lender's rights and obligations under this Agreement, shall bind and benefit our respective distributees, legal representatives, successors, heirs and assigns. Lender retains any such rights it may otherwise have that are not set forth in this Agreement. This Paragraph shall not be read to give me the right to sublet the Apartments, assign the Leases or transfer the Shares. However, Lender may assign this Agreement and its rights to the Security without my consent.

19.    Legal Expenses

If any legal proceeding is commenced in which Lender is made a party which relates to this Agreement or the Note, or if any attorney, on Lender's behalf, seeks to assert or defend Lender's rights under this Loan or the lien created by this Loan, I will repay on Lender's demand all of its legal fees, costs, expenses, disbursements and allowances, to the extent applicable law permits. Any amounts payable to Lender under this Paragraph shall be payable with interest from the date Lender requires payment at the then applicable rate set forth in the Note.

20.    Use of Captions

Captions are used in this Agreement only as a matter of convenience and do not define or describe the intent of any provision.

21.    New York Law

This Agreement shall be governed by the laws of the State of New York and any applicable federal law. In the event of a conflict between any provision of this Agreement and any federal or New York State statute, law or regulation in effect as of the date of this Agreement, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Agreement shall be without effect. All other provisions of this Agreement will remain fully effective and enforceable.

22.    Modification of Agreement

This Agreement may not be modified without the mutual agreement in writing of Lender and myself.

23.    Notice

All written notices and demands are to be given to me by personal delivery or by first class mail to the address of the Apartment or at a different address if I give Lender a notice of my different address. All written notices to Lender regarding this Agreement must be given by first class mail to Lender at the address identified on page 1 of this Agreement or at a different address if I am given notice of that different address.

24.    My Rights Before Default

Until there is a default under this Agreement and Lender has demanded payment in full, I will have all rights, responsibilities and privileges of a shareholder and lessee not otherwise affected by this

Agreement. I have the sole responsibility for making all payments required by the Leases and for complying with all the terms and conditions of the Leases. Except as otherwise set forth in this Agreement, my responsibilities under the Leases shall continue after any default by me under the Note or this Agreement.

25.     Distribution of Capital

Lender will have the right to receive any distributions of capital from the Corporation and shall apply any such distributions to reduce the amount that I owe to Lender.

26.     Responsible Parties

If more than one person signs this Agreement, each will be fully responsible for complying with its terms.

27.     Delivery of Security

If I sell the Apartments before the Loan is paid in full, I may ask Lender to release its Security to me at the closing of the sale. At my request, Lender may, but will not be required to, arrange for one of its closing attorneys to deliver the Security and collect for Lender the amount which is necessary to pay off the Loan. Lender's closing attorney may charge me a reasonable fee for this service. I have signed this Agreement on the date set down at the beginning of this document.


Olaf Guerrand-Hermes, Borrower

Kingdom of Morocco          )
District of Casablanca       )
City of Casablanca           )SS
Consulate Général of The     )
United States of America     )

Sworn to before me this _____
day of _OCTOBER, 2003_


Daniel J. ERNST
Vice Consul of the United
States of America

## ASSIGNMENT OF PROPRIETARY LEASE

KNOW THAT, Olaf Guerrand-Hermes, Assignor in consideration of the sum of One Dollar ($1.00) paid by Micalden Investments SA, Assignee, and for other good and valuable consideration, does hereby assign unto Assignee certain leases (the "Leases") made by Hotel des Artistes, Inc. ("Lessor Corporation") with Assignor, dated July 1 ; 1990 for Apartments 603, 601,6M, and 600 in Premises 1 West 67th Street, New York, New York 10023.

TO HAVE AND TO HOLD the same unto Assignee, his personal representatives and assigns, from and after _____ for all the rest of the term of the Leases, or any renewals or extensions thereof, and subject to the covenants, conditions and limitations therein contained.

IN WITNESS WHEREOF, Assignor has executed this Assignment on_____

Olaf Guerrand-Hermes

Sworn to before me this *2ud* day of *OCTOBER 2007*

Kingdom of Morocco )
District of Casablanca )
City of Casablanca )
Consulate Général of The )ss
United States of America )
)
)

Daniel J. ERNST
Vice Consul of the United
States of America

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MICALDEN INVESTMENTS SA,

          Plaintiff,

      -against-

OLAF GUERRAND-HERMES,

          Defendant.

**AFFIDAVIT FOR
JUDGMENT BY CONFESSION**

| | | |
|---|---|---|
| STATE OF NEW YORK  ) | Kingdom of Morocco  ) | |
|               ) ss.: | District of Casablanca  ) | |
| COUNTY OF NEW YORK  ) | City of Casablanca  )ss | |
| | Consulate Général of The  ) | |
| | United States of America  ) | |

Olaf Guerrand-Hermes, being duly sworn, deposes and says:

1.    I am the defendant in the above entitled action.

2.    I reside at 1 West 67th Street, City of New York, County of New York, State of New York.

3.    I, the defendant in the above entitled action, confess judgment in this court in favor of the plaintiff, Micalden Investments SA, for One Million Three Hundred and Ninety Thousand Six Hundred and Seventy-Four Dollars and Thirty Cents ($1,390,674.30), plus interest and hereby authorize the plaintiff or its heirs, executors, administrators, or assigns to enter judgment for that sum against me.

4.    This confession of judgment is for a debt justly due to the plaintiff arising out of a personal loan that was made to the defendant by Micalden Investments SA, to pay the mortgage and maintenance fees for the defendant's apartment located at 1 West 67th Street, New York, New York. Proceeds from said personal loan was also used for his support and maintenance and the support and maintenance of defendant's two children Slava and Oleg. This personal loan was made in several separate transactions which are listed below:

(a) $125,036.62 made on February 24, 2003, for mortgage payments and maintenance fees due on the defendant's apartment.

(b) $20,036.62 made on February 24, 2003, as repayment for loan given by Mathis Guerrand-Hermes to defendant.

(c) $16,326.62 made on February 24, 2003, for living expenses.

(d) $5,508.99 made on March 3, 2003, for legal fees.

(e) $1,000,036.68 made on March 17, 2003, for loan repayment/equity purchase given by Patrick Guerrand-Hermes to defendant.

(f) $21,756.27 made on March 27, 2003, for Lycée Francais School tuition and living expenses.

(g) $5,538.26 made on April 8, 2003, for living expense.

(h) $20,037.91 made on May 14, 2003, as repayment for loan given by Mathis Guerrand-Hermes to defendant.

(i) $7,537.84 made on May 15, 2003, for legal fees.

(j) $5,037.84 made on May 15, 2003, for living expenses.

(k) $6,072.42 made on May 19, 2003, for living expenses.

(l) $12,170.86 made on May 28, 2003, for assessment charges for defendant's apartment.

(m) $6,101.53 made on June 12, 2003, for airline tickets for the defendant and his children to and from Morocco and living expenses.

(n) $4,138.30 made on June 12, 2003, for life insurance policy.

(o) $33,538.52 made on June 16, 2003, as mortgage payment for defendant's apartment.

(p) $5,884.33 made on July 10, 2003, for living expenses

(q) $10,036.62 made on July 31, 2003, for legal fees.

(r) $4,036.12 made on September 16, 2003, for living expenses.

(s) $31,795.00 made on September 19, 2003, as mortgage payment for defendant's apartment.

(t) $50,037.00 made on September 22, 2003, for common charges, assessments, and ancillary charges for defendant's apartment.

5.    This confession of judgment is not for the purpose of securing the plaintiff a nst a contingent liability.

Dated:

Olaf Guenard Hermes, Defendant

Sworn to before me this 2nd
day of october 200 3

Daniel J. ERNST
Vice Consul of the United
States of America