UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
MICALDEN INVESTMENTS S.A.

                Plaintiff,

         - against –                       Case No. 07 CV 2395 (VM)

OLGA ROSTROPOVICH, COOLEY GODWARD
KRONISH LLP, RENEE SCHWARTZ, ATOOSA P.
MAMDANI, and MAHMOUD A. MAMDANI,

                Defendants.
------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION BY DEFENDANTS COOLEY GODWARD KRONISH LLP AND RENEE SCHWARTZ TO DISMISS THE COMPLAINT AND IN OPPOSITION TO THE MOTION BY MICALDEN INVESTMENTS S.A. FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866

Attorneys for Defendants
**COOLEY GODWARD KRONISH LLP
and RENEE SCHWARTZ**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICALDEN INVESTMENTS S.A.

                    Plaintiff,

              - against –                Case No. 07 CV 2395 (VM)

OLGA ROSTROPOVICH, COOLEY GODWARD
KRONISH LLP, RENEE SCHWARTZ, ATOOSA P.
MAMDANI, and MAHMOUD A. MAMDANI,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION BY DEFENDANTS COOLEY GODWARD KRONISH LLP AND RENEE SCHWARTZ TO DISMISS THE COMPLAINT AND IN OPPOSITION TO THE MOTION BY MICALDEN INVESTMENTS S.A. FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Defendants Cooley Godward Kronish LLP and Renee Schwartz (collectively, the "CGK Defendants"), by their counsel Kleinberg, Kaplan, Wolff & Cohen, P.C., respectfully submit this reply memorandum of law in further support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and request that (i) this action by plaintiff Micalden Investments S.A. ("Micalden") be dismissed; or alternatively, (ii) this motion be held in abeyance, so that the CGK Defendants may conduct limited discovery concerning the legitimacy and enforceability of the alleged security agreements and related issues concerning Micalden and purported debtor Olaf Guerrand-Hermes, and the matters raised on this motion, and thereafter supplement this motion.

The CGK Defendants further respectfully submit this memorandum of law in opposition to the motion by Micalden to file its proposed Second Amended Complaint dated September 11, 2007 (the "Second Amended Complaint").

* * *

As described in the moving papers, Micalden's complaint presupposes that it can establish that Micalden had an enforceable security interest in the apartment shares, lease and sale proceeds, and that its UCC-1 financing statement was valid. Micalden's complaint must be dismissed absent an enforceable security interest.[1] Micalden and Mr. Guerrand-Hermes, however, never produced a written security agreement during the underlying state court litigation commenced in the year 2001 – concerning the very same apartment shares, lease and sale proceeds – then failed to allege the existence of a written security agreement in Micalden's initial complaint in this action.

Micalden and Mr. Guerrand-Hermes have gone now from having no security agreement to having too many. Following the CGK Defendants' May 31, 2007 motion to dismiss for failure to allege the existence of a security agreement, Micalden repeatedly requested extensive adjournments to respond so that it could try to locate one. Almost three months later, Micalden produced one purported security agreement. A few days after that, it produced yet another purported security agreement along with multiple amended pleadings. These supposed security agreements raised more questions than they

---

[1] However, to the extent this Court determines that Micalden has a valid security interest, the CGK Defendants reserve their right to assert during this litigation their many additional arguments warranting the dismissal of Micalden's complaint.

answered. The foregoing documents, particularly the so-called security agreements, are riddled with gaping holes and gross inconsistencies, relate to non-existent promissory notes, and apply to entities other than the plaintiff. The proffered security agreements on their face do not appear to be either valid or relevant to this action.

In Micalden's initial opposition, Mr. Guerrand-Hermes stated that he "borrowed approximately $1.4 million from Micalden" and "[i]n connection with this borrowing, on or about February 20, 2003 ... signed a promissory note in which [he] agreed to make payment to Micalden .... [O]n or about May 23, 2003, [he] signed a Security Agreement ...."[2] Micalden's Amended Complaint dated September 6, 2007 (the "Amended Complaint"), reiterated that "[i]n or about May, 2003, Olaf [Guerrand-Hermes] executed a Security Agreement to secure his indebtedness to Micalden under the [Promissory] Note."[3] The defects and contradictions in this putative security agreement ("Purported Security Agreement I"),[4] the Promissory Note, Mr. Guerrand-Hermes' initial affidavit and the Amended Complaint are numerous and significant:

- Purported Security Agreement I is dated "as of Mars [i.e., March] 25, 2003," not May 23, 2003.

---

[2] Affidavit of Olaf Guerrand-Hermes dated September 7, 2007 (the "Initial Guerrand-Hermes Aff."), ¶¶ 2-3, annexed as Exhibit A to the Affirmation of Edward Rubin in Opposition to Defendants' Motion To Dismiss Complaint dated September 7, 2007. The Initial Guerrand-Hermes Aff. is neither a sworn affidavit nor a declaration pursuant to 28 U.S.C. § 1746. See also Demand Revolving Promissory Note dated as of February 20, 2003 (the "Promissory Note"), annexed as Exhibit A to the Initial Guerrand-Hermes Aff.

[3] Amended Complaint, at ¶ 11 (docket number 25).

[4] Purported Security Agreement I, annexed as Exhibit B to the Initial Guerrand-Hermes Aff.

- Purported Security Agreement I explicitly references a "Demand Revolving Promissory Note dated May 23, 2003" – not dated February 20, 2003. Thus, Purported Security Agreement I does not relate to the loan referred to in the Amended Complaint or the Promissory Note, and inexplicably pre-dates the referenced promissory note dated May 23, 2003.

- Purported Security Agreement I names "Micalden Investments Limited" as the secured party under the alleged agreement. However, "Micalden Investments S.A." is the plaintiff in this action and the obligee under the Promissory Note. By its terms, Purported Security Agreement I does not apply to the plaintiff in this action, Micalden Investments S.A.

Micalden's initial response to the CGK Defendants' motion was so transparently weak that, only four days later, after serving the Amended Complaint and producing Purported Security Agreement I, Micalden submitted a proposed Second Amended Complaint.[5] In the proposed Second Amended Complaint, Micalden abandoned its prior allegations that Mr. Guerrand-Hermes signed a written security agreement on or about May 23, 2003, and ignored its days-old submission of Purported Security Agreement I. Instead, Micalden alleged in the proposed Second Amended Complaint not only that Mr. Guerrand-Hermes signed the promissory note "[i]n or about February, 2003," but also that "[o]n or about October 2, 2003, Olaf [Guerrand-Hermes] executed ... a Security Agreement to secure his indebtedness to Micalden under the [Promissory] Note."[6] In addition to the unauthorized and deficient proposed Second

---

[5] See proposed Second Amended Complaint filed on September 18, 2007, annexed as Exhibit C to the Affirmation of Edward Rubin in Support of Plaintiff's Motion To Supplement Its Opposition to Defendants' Motion To Dismiss Complaint dated September 11, 2007 and filed on September 18, 2007 ("Supplemental Rubin Aff.").

[6] Id. at ¶ 11.

Amended Complaint, Micalden has submitted a supplemental affidavit by Mr. Guerrand-Hermes filed on September 18, 2007 (the "Supplemental Guerrand-Hermes Aff.") and the second putative security agreement dated October 2, 2003 ("Purported Security Agreement II").[7]

Micalden's constantly changing story and the submission of Purported Security Agreement II further undercut any notion that its security interest is valid:

- Purported Security Agreement II, which is dated October 2, 2003, refers to a "note" "signed this day,"[8] but Micalden and Mr. Guerrand-Hermes neither referenced nor produced any promissory note dated or executed on October 2, 2003. In fact, the proposed Second Amended Complaint and the Guerrand-Hermes Aff. refer to only the Promissory Note, which is dated as of February 20, 2003. Purported Security Agreement II simply does not apply to the Promissory Note that is the subject of this litigation.[9]

- The claimed execution and convenient timing of Purported Security Agreement II on or about October 2, 2003, is an integral part of the machinations by Micalden and Mr. Guerrand-Hermes:

    (1) A few weeks earlier, on September 10, 2003, Olga Rostropovich, Mr. Guerrand-Hermes' former wife and judgment creditor, moved for an order sequestering their marital apartment, appointing a receiver to sell it, and applying the net sales proceeds to Mr. Guerrand-Hermes' arrears and

---

[7] See Purported Security Agreement II, annexed as Exhibit A to the Supplemental Guerrand-Hermes Aff., which, in turn, is annexed as Exhibit B to the Supplemental Rubin Aff.

[8] Purported Security Agreement II, at § 1.

[9] Nor can the October 2, 2003 promissory note referred to in Purported Security Agreement II be the purported confession of judgment for $1,390,674.30 by Mr. Guerrand-Hermes in favor of Micalden (the "Confession of Judgment"). The Confession of Judgment is separately defined and referenced in Purported Security Agreement II. Id. at § 6.

future spousal and child support (the "Sequestration Motion").[10] Mr. Guerrand-Hermes claims he executed Purported Security Agreement II on October 2, 2003. Even assuming Purported Security Agreement II was in fact executed on that date, it is clear that Purported Security Agreement II was executed in order to circumvent the anticipated sequestration order.

(2) Moreover, the supposed execution date of Purported Security Agreement II is decidedly coincidental. The very next day, on October 3, 2003, Justice Goodman issued her trial decision (the "Divorce Decision") and awarded Ms. Rostropovich a second judgment against Mr. Guerrand-Hermes for $453,010 in arrears.[11] The possibility that Purported Security Agreement II was backdated cannot be discounted.

- Purported Security Agreement II, which purports to delineate those entities with interests in the alleged collateral, makes no mention of Ms. Rostropovich's existing judgments, outstanding claims or the then pending Sequestration Motion. Like the Confession of Judgment, which Justice Goodman set aside at the time as a "fraudulent conveyance under § 276 of the Debtor and Creditor Law,"[12] Purported Security Agreement II appears to be a sham.

The foregoing putative security agreements are unenforceable, and they are not relevant to this matter.

\* \* \*

---

[10] See Micalden's Complaint dated March 22, 2007, at ¶ 12, annexed as Exhibit A to the Moving Transmittal Affidavit of David Parker sworn to on May 31, 2007 ("Moving Parker Aff.").

[11] See Decision and Order dated October 3, 2003, by the Honorable Emily Jane Goodman, J.S.C., annexed as Exhibit D to the Moving Parker Aff.

[12] See Decision and Order dated March 17, 2004, by the Honorable Emily Jane Goodman, J.S.C., at 6-9, annexed as Exhibit L to the Moving Parker Aff. Justice Goodman's well-reasoned, fact-specific and detailed decision was overturned more than two years later, on June 29, 2006, because, according to the Appellate Division, the trial court should have held an evidentiary hearing.

For years, in connection with the underlying litigation, Micalden and Mr. Guerrand-Hermes tendered no security agreement evidencing the belatedly-claimed indebtedness of Mr. Guerrand-Hermes to Micalden, although the nature of that indebtedness was hotly litigated. Then Micalden conjured up Purported Security Agreement I, which contains the wrong date, relates to a supposed obligation other than the Promissory Note, and does not even name the plaintiff as the secured party. Thereafter, Micalden produced Purported Security Agreement II, which too has nothing whatever to do with the Promissory Note, was supposedly executed after service of the Sequestration Motion and the day immediately before the Divorce Decision, and contains other deficiencies.

In its opposition, Micalden provides no explanation as to why *two* putative security agreements were executed – and why *one* was not sufficient. Micalden fails to state why the existence of one or both of the purported security agreements was not alleged in Micalden's initial complaint. Micalden does not explain why it took almost three months for Micalden to locate and turn over copies of the putative security agreements following the filing of the CGK Defendants' motion to dismiss, and why both alleged security agreements could not be located and produced at the same time. The identity of Micalden's "American" lawyer, who, according to Micalden, supposedly prepared Purported Security Agreement II, is conspicuously omitted from Micalden's opposition, and Micalden tenders no explanation why its unnamed American lawyer did not or could not produce Purported Security Agreement II, requiring Mr. Guerrand-Hermes

to obtain a copy from his lawyer in France.[13] In this connection, Micalden fails to explain why only counsel for Mr. Guerrand-Hermes, and not Micalden's counsel, had the Purported Security Agreement II in his possession.

Based upon all of the foregoing, Micalden should not be allowed to rely upon the putative security agreements, and the CGK Defendants' motion to dismiss should be granted. However, in the event this Court is not inclined to grant dismissal at this time, and in view of the deficiencies and contradictions in Micalden's opposition and Purported Security Agreements I and II, and their complete lack of relevance to the Promissory Note at issue in this action, this dismissal motion should be held in abeyance so that the CGK Defendants may conduct limited, bifurcated discovery.

The CGK Defendants' requested discovery would expeditiously seek documents as well as written and oral testimony concerning the matters raised by this motion relating to Micalden, Mr. Guerrand-Hermes and their security agreements, loans, promissory notes, confessions of judgment, related documents, and the purpose and circumstances of their creation and execution, including, without limitation, the pertinent documents in the possession of the unidentified "American" attorney for Micalden. This limited discovery by the CGK Defendants will likely prove conclusively that Micalden does not have a valid security interest in the alleged collateral, that the motion to dismiss should be granted (or the motion should be converted to a motion for summary judgment,

---

[13] See Supplemental Guerrand-Hermes Aff. and the letter by Micalden's counsel to the Court dated September 11, 2007, annexed as Exhibit A to the Supplemental Rubin Aff.

then granted), and that this case should be dismissed. The requested bifurcated discovery should therefore shorten this litigation and conserve judicial resources.[14]

## Conclusion

For the reasons stated above, the CGK Defendants respectfully request that (i) this action be dismissed; alternatively, (ii) this motion be held in abeyance so that the CGK Defendants may conduct limited discovery concerning the legitimacy and enforceability of the alleged security agreements and related issues concerning Micalden and Mr. Guerrand-Hermes, and the matters raised on this motion, and thereafter supplement this motion; (iii) Micalden's motion for leave to file the Second Amended Complaint be denied, and (iv) the CGK Defendants be granted such further and additional relief as may be just and proper.

Dated: October 17, 2007

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.

By: _____
David Parker
Marc R. Rosen

551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866

Attorneys for Defendants
**COOLEY GODWARD KRONISH LLP
and RENEE SCHWARTZ**

---

[14] Should the motion to dismiss or any related motion by the CGK Defendants be denied, the parties would proceed to additional merit-based discovery.

## CERTIFICATE OF SERVICE

I, Marc R. Rosen, associated with Kleinberg, Kaplan, Wolff & Cohen, P.C., counsel to defendants Cooley Godward Kronish LLP and Renee Schwartz, hereby certify that true and correct copies of the Reply Memorandum of Law in Further Support of the Motion by Defendants Cooley Godward Kronish LLP and Renee Schwartz To Dismiss the Complaint and in Opposition to the Motion by Micalden Investments S.A. for Leave To File a Second Amended Complaint dated October 17, 2007, were served upon Edward Rubin and Michael Schneider, Attorneys for Plaintiff **MICALDEN INVESTMENTS S.A.**, 477 Madison Avenue, New York, New York 10022; Arthur Jakoby and Avery Mehlman, Herrick, Feinstein LLP, Attorneys for Defendants **ATOOSA P. MAMDANI and MAHMOUD A. MAMDANI**, Two Park Avenue, New York, New York 10016; and Gilbert M. Goldman, Attorney for Defendant Olga Rostropovich, 515 Madison Avenue, 30th Floor, New York, New York 10022, by personal delivery.

Dated:   New York, New York
         October 17, 2007

                                        _____
                                        Marc R. Rosen